Joseph C. Patterson and Caroline S. Patterson, Appellants, *v.* County of Allegheny, Appellee.

Argued May 9, 1974, before Judges CRUMLISH, JR., WILKINSON, JR., and BLATT, sitting as a panel of three.

*Alan L. Ackerman*, with him *Michael R. Stabile, Jr.*, *Lloyd Patross* and *Berkman, Ruslander, Pohl, Lieber & Engel*, for appellants.

*Samuel P. Kamin*, Assistant County Solicitor, with him *Francis A. Barry*, County Solicitor, for appellee.

OPINION BY JUDGE CRUMLISH, JR., September 24, 1974:

On March 13, 1970, the County of Allegheny (condemnor) filed a declaration of taking, condemning in its entirety the property of Joseph C. Patterson and Caroline S. Patterson (hereinafter collectively referred to as "condemnee"), consisting of 14.6 acres and located in Findlay Township, Allegheny County, for the expansion of the Greater Pittsburgh Airport. The property was of an oblong rectangular shape, with a 432 foot frontage on Moon-Clinton Road, and abutted in part but did not have direct access to the Beaver Valley Expressway to the rear. The first four-way interchange west of the Airport was 100 feet from the property, travelling along Moon-Clinton Road. Topographically, the property was noted by a "dip" or depression 125 feet in depth running through the property, with level plateaus to the front and rear. At the time of the taking, the land was utilized by condemnee as a residence, with a single-family home the only structure thereon,

serviced by all utilities but public sewer.[1] Zoning was then S-1 (Special).

Condemnee delivered possession of the property to condemnor on May 20, 1970, and was thereafter paid estimated just compensation of $51,800.00 pursuant to Section 407 of the Eminent Domain Code, Act of June 22, 1964, Special Session, P.L. 84, *as amended*, 26 P.S. §1-407, and incidental moving expenses. A Board of Viewers returned a verdict of $65,700.00 in favor of condemnee on June 17, 1971. Condemnee appealed this award to the Court of Common Pleas of Allegheny County which—after three mistrials, Judge DOYLE decided the case on a non-jury basis—returned a verdict of $73,065.00 less the $51,800.00 paid on account, with detention damages from May 30, 1970. From the order of the court en banc, dated April 25, 1973, dismissing condemnee's exceptions and directing the entry of a judgment on the trial court's findings, condemnee has appealed to this Court for new trial.

Our scope of review in appeals of this nature is limited to a determination of whether or not the trial court has committed a manifest abuse of discretion or error of law in granting or denying a new trial, and whether or not the verdict is against the clear weight of the evidence, or the judicial process has otherwise worked a serious injustice upon the appealing party. *Cohen v. Redevelopment Authority of Philadelphia,* 12 Pa. Commonwealth Ct. 125, 315 A. 2d 372 (1974) ; *Redevelopment Authority of Philadelphia v. United Novelty & Premium Company, Inc.,* 11 Pa. Commonwealth Ct. 216, 314 A.2d 553 (1973).

Initially, we must briefly dispose of condemnor's motion to quash the appeal as not perfected pursuant to the requirements of Section 2 of the Act of April 22,

---

[1] Public water was available, but condemnee continued to use a private well.

1874, P.L. 109, *as amended,* 12 P.S. §689,[2] in that condemnee filed exceptions to the trial court's adjudication without first requesting the court to enter findings of fact and conclusions of law from which the same exceptions could be filed. This circuitous and time-consuming procedure has been eliminated by Pa. R.C.P. No. 1038 which suspends in part Section 2 of the Act of 1874,[3] and provides for exceptions to be filed within twenty (20) days of a decision by a judge sitting without a jury in all actions at law. *See* Commentary, Rule 1038, Goodrich-Amram Civil Practice (1973 Supplement), p. 432, 433. Appellee's reliance upon *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A. 2d 594 (1970), is misplaced in that (1) the appeal there was taken prior to the effective date of Rule 1038,[4] and (2) the Appellant in *Singer* never filed exceptions as to the point of law which the Supreme Court held not be perfected on appeal. Condemnee's appeal here was properly perfected by taking timely exceptions to the trial court's adjudication, without first requesting supportive findings of fact and conclusions of law.

---

[2] This provision reads in pertinent part as follows: "The decision of the court shall be in writing, and, if requested by counsel for either party for the purpose of filing exceptions or for the taking of an appeal, shall state separately and distinctly the facts found, the answers to any points submitted in writing by counsel and the conclusions of law . . . and if no exceptions thereto are filed in the proper office within thirty days after service of such notice judgment shall be entered thereon by the prothonotary or clerk— if exceptions to the findings of fact or conclusions of law be filed within thirty days, the court or the judge thereof who tried the case in vacation, may, upon argument, order judgment to be entered according to the decision previously filed, or make such modifications thereof as in justice and right shall seem proper, subject always, nevertheless, to the right to appeal."

[3] Pa. R.C.P. No. 1038(f) (1).

[4] Section 2 of the Act of 1874 was then only suspended as to trespass actions by Pa. R.C.P. Nos. 1048(f) and 1401.

Condemnee's principal contention on appeal is that the trial court erred in refusing to adopt the opinion of its experts, alleged to be unrebutted, of the highest and best use of the property as a motel-restaurant-service station complex. A general contractor testified on behalf of condemnee that the property, with imaginative site preparation, was physically adaptable to such a use; and this testimony was neatly complemented by a real estate expert's opinion supported by extensive market studies that there was a public demand for such a use in the relevant market at the time of the condemnation. The trial court admitted this evidence as within the guidelines of *Pa. Gas & Water Co. v. Pa. Turnpike Comm.*, 428 Pa. 74, 236 A. 2d 112 (1967),[5]

---

5. The basic requirements for proving the highest and best use of the condemned property established by *Pa. Gas & Water Co.*, *supra*, are "[f]irst, the condemnee must show the physical adaptability of the land to such a use, and second it must be demonstrated that this use is needed in the area." 428 Pa. at 81, 236 A. 2d at 116. The testimony of condemnee's real estate expert, if found to be credible, would certainly satisfy the second element of "need." Given the extent of site work requird to fill and grade the 125 foot depression running through the property, there is some question of whether the property was "physically adaptable" for development as a motel-restaurant-service station complex at the time of the condemnation. Although a condemnee need not show immediate plans of converting the property to the highest and best use suggested or make physical changes to his property pointing toward that use, the Supreme Court was careful to note in *Pa. Gas & Water Co.*, *supra*, that "even if the need is present, if the land *at the time of the condemnation* is not yet physically suited for the claimed best use, the condemnee will not prevail." (Emphasis in original). 428 Pa. at 82, 236 A. 2d at 116. Interpreting this requirement, we think the trial judge properly admitted this evidence as to highest and best use, but discounted the market value of the property for such a potential use by the estimated cost of these site improvements as would the average buyer considering such a use. *See Stoner v. Metropolitan Edison Co.*, 439 Pa. 333, 266 A. 2d 718 (1970); *In re Condemnation by the Pa. Turnpike Comm.*, 1 Pa. Commonwealth Ct. 66, 272 A. 2d 279 (1970).

but, as the fact finder, chose to believe the testimony of condemnor's experts who were of the opinion that the highest and best use of the property was residential with the possibility of future commercial development as a garage, small warehouse, research facility, or other related use of the level front acres and which depended upon easy accessibility from Moon-Clinton Road and the Beaver Valley Expressway. Suffice it to say that the testimony of condemnor's experts was competent and rebutted condemnee's theory of highest and best use, and it is within the province of the trial judge, acting as a jury, to resolve conflicts in this testimony and to weigh the credibility of the respective witnesses in determining the damages suffered by the condemnee. *Glider v. Commonwealth*, 435 Pa. 140, 255 A. 2d 542 (1969), *Kasych v. Commonwealth of Pennsylvania, Department of Transportation*, 11 Pa. Commonwealth Ct. 621, 314 A. 2d 575 (1974); *Felix v. Baldwin-Whitehall School District*, 5 Pa. Commonwealth Ct. 183, 289 A. 2d 788 (1972). Moreover, it is difficult to understand condemnee's argument that its testimony was unrebutted when the court viewed the property, and thus could base its verdict upon its own judgment of the value of the property without disregarding the expert's valuation testimony. *See Commonwealth v. 108.3 Acres of Land*, 431 Pa. 341, 246 A. 2d 124 (1968); *Kasych v. Commonwealth of Pennsylvania, Department of Transportation, supra.*

We similarly dispose of condemnee's argument that the court improperly excluded evidence tending to establish a reasonable probability that condemnee's property would have been rezoned from S-1 to B-2 to permit the motel-restaurant-service station use suggested by condemnee. As our Supreme Court stated in *Snyder v. Commonwealth*, 412 Pa. 15, 19, 192 A. 2d 650, 652 (1963), quoting with approval 4 Nichols on Eminent Domain, §12.322(1) (Rev. 3d ed. 1962): "Where the

enactment of the zoning restriction is not predicated upon the inherent evil of the proscribed use—in other words, where the forbidden use is malum prohibitum rather than malum in se—and there is a possibility or probability that the zoning restriction may in the near future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely as to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulation must not be remote or speculative."

Contrary to condemnee's suggestion, the trial judge in the instant case did not exclude testimony as to a probable rezoning,[6] but rather admitted extended testimony by members of the Findlay Township Planning Commission, and in fact found that such a rezoning was probable. That the court discounted this probability by such factors as the fact that condemnee had not applied for a rezoning before the condemnation, reflects that the court followed the caveat of *Snyder, supra,* that the property must not be valued as if the rezoning were an accomplished fact. *See Kasych, supra.*

Did the court err in ruling preliminarily that a sale of a property (the Davis sale) directly across the road from condemnee's property to the condemnor for the same airport expansion program was inadmissible? Our Supreme Court has squarely held that such sales to a condemnor, even if comparable, are not admissible as tending to be the product of coercion on either the seller or buyer's part. *Scavo v. Commonwealth of Pennsylvania, Department of Transportation,* 439 Pa.

---

[6] The court did sustain objections to questions calling for an opinion of a witness as to the probability of a rezoning which would invade the fact finding function of the jury or the trial judge sitting without a jury as in this case. *See Snyder, supra.*

233, 266 A. 2d 759 (1970); *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority,* 435 Pa. 344, 253 A. 2d 260 (1969). Condemnee attempts to distinguish this clear authority by directing our attention to the public record of the Davis sale wherein the seller stipulated that the purchase price was the fair market value of the property sold to the condemnor. Initially we note that this sales agreement, though a public record, was not incorporated into or was otherwise made a part of the record, and is thus not properly before us. Moreover, we cannot agree that such proof would dispel the taint of a coerced sale recognized by Justice POMEROY in *Community Housing Services, Inc., supra,* because it is clear that the agreement was executed in lieu of acquiring the property by way of condemnation proceedings, and the stipulation was to the condemnor's obvious benefit as proof of fair market value in the event of a future condemnation proceeding involving the same property.

The trial court denied condemnee's claim of $500.00 for appraisal, attorney and engineering fees under Section 610 of the Code[7] because condemnee had not proved that such expenses were actually incurred. Given the extensiveness of the record compiled in this case, and the exhaustive preparation of condemnee's appraisal and engineering experts evidenced by their testimony, we find it difficult to believe that condemnee has not expended at a minimum $500.00 in appraisal, attorney, and engineering fees authorized by Section 610. These

---

[7] The section which was added by the Act of December 29, 1971, P.L. 635, 26 P.S. §1-610, provides: "The owner of any right, title or interest in real property acquired or injured by an acquiring agency, who is not eligible for reimbursement of such fees under sections 406(e), 408 or 609 of this act, shall be reimbursed in an amount not to exceed five hundred dollars ($500) as a payment toward reasonable expenses actually incurred for appraisal, attorney and engineering fees."

fees must be denied to condemnee for a more fundamental reason, however, as the reimbursement provided by Section 610 only applies to condemnations effected after the effective date of that section, which was December 29, 1971.[8] As the instant condemnation was effected on May 20, 1970 by the filing of a declaration of taking, and Section 610 must be applied prospectively as affecting substantive rights, condemnee has no right of recovery under Section 610. *See Pane v. Department of Highways,* 422 Pa. 489, 222 A. 2d 913 (1966); *Apple Storage Company v. School District of Philadelphia,* 4 Pa. Commonwealth Ct. 55, 284 A. 2d 812 (1971).

Condemnee's claim of $1,500.00 for replacement housing under former Section 615(b) of the Code[9] was also denied by the court below. This section provided as follows: *"In addition to amounts otherwise authorized,* the condemnor shall make a payment to any individual or family displaced from any dwelling not eligible to receive a payment under subsection (a) of this section which dwelling was actually and lawfully occupied by such individual or family for not less than ninety days prior to the condemnation . Such payment, not to exceed fifteen hundred dollars ($1500), *shall be the amount which is necessary to enable such person* to lease or rent for a period not to exceed two years or to make the down payment on the purchase of a decent, safe and sanitary dwelling of standards adequate to accommodate such individual or family in areas not generally less desirable in regard to public utilities and public and commercial facilities." (Emphasis supplied.) 26 P.S. §1-615(b).

[8] Act of December 29, 1971, P.L. 635, §11.

[9] Added by the Act of December 5, 1969, P.L. 326, §1; repealed by the Act of December 29, 1971, P.L. 635, §6; and replaced by Section 603-A, 26 P.S. §1-603A.

Condemnee meets all of the factual prerequisites of Section 615(b) : 1) Condemnee was displaced from a dwelling which they had occupied more than ninety days prior to the date of the condemnation; 2) they leased an apartment in Coraopolis, Pennsylvania, for a period of one year, ending April 30, 1970, with a total rental of $2,220.00; and 3) they were ineligibile for payment under subsection (a) of 615 because they did not purchase and occupy a comparable dwelling within one year of the condemnation or displacement. Notwithstanding the above, the court below denied condemnee payment under Section 615(b) because they had received $51,800.00 at the time they surrendered possession to condemnor, and thus the payment was not "necessary to enable" condemnee to rent a comparable dwelling. We cannot agree with this limitation of Section 615(b) to those displaced persons who have not received payment of estimated compensation or who are otherwise without resources to rent replacement housing because the payment authorized by this section is expressly "(i)n addition to amounts otherwise authorized," and intended as incidental damages under Article VI of the Code. *See Swager v. Redevelopment Authority of City of Chester,* 58 Pa. D.&C. 2d 46, 50 (Del. C.P. 1972).

We have carefully considered the other exceptions raised by condemnee to the evidentiary rulings of the trial court, and find them to be without merit.

Consistent with the above, we enter the following

## Order

And Now, September 24, 1974, the order of the Court of Common Pleas of Allegheny County in the above-captioned case is affirmed, except as to its denial of $1,500.00 for replacement housing to Joseph C. Patterson and Caroline S. Patterson, and accordingly it is

ordered that judgment be entered in this amount against the County of Allegheny, with delayed compensation payable from May 30, 1970.