369 A.2d 1271

**Harry M. GEHRIS and Anna E. Gehris, Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania DEPART-MENT OF TRANSPORTATION.**

Supreme Court of Pennsylvania.

Argued May 4, 1977.

Decided Feb. 28, 1977.

Steven & Lee, Calvin E. Smith, Charles H. Weidner, Reading, for appellants.

Lawrence R. Wieder, Asst. Atty. Gen., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

In this appeal we are asked to decide the narrow question whether § 610 of the Eminent Domain Code, which

allows condemnees a limited reimbursement for appraisal expenses, is applicable to a case wherein the condemnation was effectuated prior to the effective date of § 610, but the expenses were incurred after that date. The Commonwealth Court, reversing the trial court, answered this question in the negative. *Department of Transportation v. Gehris*, 19 Pa.Cmwlth. 287, 339 A.2d 639 (1975). We granted the condemnees' petition for leave to appeal, and now reverse the order of the Commonwealth Court.

The facts are not disputed. On September 21, 1970, an approximate one-half acre tract in Muhlenberg Township, Berks County, was condemned by the Department of Transportation [hereinafter "Department"] for highway improvement purposes. Compensation of $7,900 was tendered to the owner-condemnees, Harry M. and Anna E. Gehris, appellants herein, on December 1, 1970. Thereafter, on October 3, 1973, a board of viewers appointed on a petition by appellants filed a report awarding damages of $27,500. The Department appealed this award to the court of common pleas, and following a jury trial, a verdict was returned in condemnees' favor in the sum of $26,000 plus damages for detention. The parties stipulated that the condemnees had expended in excess of $500 in appraisal expenses and that they had incurred these expenses subsequent to December 29, 1971, the effective date of § 610. The trial judge thereupon molded the verdict to include appraisal expenses of $500, the maximum allowed by the statute. The Department moved to strike the portion of the verdict representing appraisal fee reimbursement, and the court en banc denied the motion. On Appeal, this order was reversed by the Commonwealth Court.[1]

---

1. The opinion of the Commonwealth Court notes that the issue here presented had been decided adversely to the condemnees in *Patterson v. County of Allegheny*, 15 Pa.Cmwlth. 228, 325 A.2d 484 (1974).

The Eminent Domain Code [hereinafter "Code"], originally enacted in 1964, was amended in 1971 to add § 610, which states:

"The owner of any right, title, or interest in real property acquired or injured by an acquiring agency, who is not eligible for reimbursement of such fees under sections 406(e), 408 or 609 of this act, shall be reimbursed in an amount not to exceed five hundred dollars ($500) as a payment toward reasonable expenses actually incurred for appraisal, attorney and engineering fees." Act of June 22, 1964, Special Sess., P.L. 84, *as added* by Act of December 29, 1971, P.L. 640, No. 169, § 7, 26 P.S. § 1–610 (Supp.1976–77).[2]

Based upon the simple directive of § 11 of the 1971 amendatory act that "[t]his act shall take effect immediately," appellants urge that § 610 is applicable to any case wherein, as here, the expenses specified in that section are incurred after the effective date of the act, December 29, 1971, regardless of when the condemnation (*i. e.*, filing of a declaration of taking)[3] was effected. The Department responds to this contention with two basic arguments: (1) to apply § 610 to this case would contravene the principle that statutes are not to be construed to operate retroactively; (2) under applicable principles of statutory construction, it is ascertainable that the intention of the legislature was that § 610 is to be construed as applying only to cases wherein the condemnation transpired after December 29, 1971. The Commonwealth Court agreed with the Department.

■■ Addressing our initial inquiry to the retroactivity issue, there can be no doubt that, absent clear language to the contrary, statutes are to be construed to operate prospectively only. Statutory Construction Act of

2. The prior § 610, dealing with moving expenses, was revised and renumbered. See § 601–A.

3. See § 402 of the Code.

1972, 1 Pa.C.S.A. § 1926; *Glancey v. Casey,* 447 Pa. 77, 288 A.2d 812 (1972); *Commonwealth v. Scoleri,* 399 Pa. 110, 160 A.2d 215 (1960). It is manifest, however, that this principle becomes pertinent only after it has been determined that a proposed operation of a statute would indeed be retrospective. In this regard, our courts have held that a statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment. In *Creighan v. Pittsburgh,* 389 Pa. 569, 132 A.2d 867 (1957), a fireman sued the City of Pittsburgh for disability benefits under the "Heart and Lung Act".[4] Because the illness was contracted over two years before the effective date of the act, the City argued that the employee's claim did not come within the purview of the statute. In an opinion by Mr. Justice (now Chief Justice) Jones, our Court disagreed:

> "*The appellee is not claiming any benefits prior to the effective date of the Act but only thereafter.* A recognition of appellee's claim does not require that we place a retroactive construction on the Act, but simply that we apply the Act to a condition which existed on the date when the Act became effective even though such condition resulted from events which occurred prior to its effective date." *Id.* at 575, 132 A.2d at 870. (Emphasis in original).

See also *Commonwealth v. Barnes & Tucker,* 455 Pa. 392, 417–418, 319 A.2d 871, 885 (1974); *Philadelphia v. Phillips,* 179 Pa.Super. 87, 116 A.2d 243 (1955); *Burger Unemployment Compensation Case,* 168 Pa.Super. 89, 77 A. 2d 737 (1951); 73 Am.Jur.2d *Statutes* § 348 (1974).

■■ Examining the language of the instant statute, it is clear that two dates are significant under § 610: the date of acquisition of real property by an acquiring agency, and the date of incurring by a condemnee of expenses

4. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. § 637 (Supp.1976–77).

for appraisal, etc. The event which results in liability of the condemnor for reimbursement is the incurring of expenses; the taking of property is merely an antecedent act, albeit an important one, which puts the chain of events in motion. In this case the expenses were incurred after the effective date of § 610. Application of that section to these facts thus involves nothing more than a prospective operation of the statute. As in *Creighan*, appellant-condemnees are "not claiming benefits prior to the effective date of the Act but only thereafter." [5]

The Department next urges us to conclude, as did the Commonwealth Court, that there is evidence of legislative intent that Section 610 should not be available where the taking had been effectuated before that section was adopted.[6] This argument is based upon another section of the Code, § 302, which stipulates the effective date of the Code as originally enacted in 1964. It provides:

*"This act shall take effect immediately upon approval, and shall apply to all condemnations effected thereafter,* except the provisions of Article IV, which shall not take effect until September 1, 1964 and shall apply to all condemnations effected thereafter. *The provisions of Articles V and VII shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act."* (Emphasis added).

**5.** The Department seeks to distinguish this case from *Creighan* on the ground that a date of condemnation is fixed and ascertainable, whereas the discovery of an illness is "moveable". We fail to see the relevance of that fact to the principle articulated in *Creighan* regarding pre-existing conditions to the operation of a statute. Only as a matter of drawing additional support for its decision did the *Creighan* Court allude to the unfairness of permitting statutory applicability to rest upon the fortuity of the date of discovery of an illness, 389 Pa. at 569, 132 A.2d 867.

**6.** Because the Commonwealth Court's opinion focused on the legislative intent issue, the above-discussed retroactivity question was not directly addressed.

■■ It is apparent from this language that Article VI of the Code, wherein the recently added § 610 has been placed, is applicable only to cases involving post-effective date condemnations, see *Pane v. Department of Highways*, 422 Pa. 489, 222 A.2d 913 (1966) ; hence if § 610 is controlled by § 302, it is by the same token inapplicable to the case at bar. The Commonwealth Court so held. *Gehris, supra,* 19 Pa.Cmwlth. at 291, 339 A.2d 639. But this approach overlooks the fact that the 1971 amendatory act which placed § 610 in the Code has its own effective date provision, and is thus not warped into the terms of § 302. Moreover, if we were to say that Sec. 302 controls the effective date of Sec. 610, it would follow that the latter section would be available with respect to all condemnations effected after approval of the Code in 1964—a result obviously unintended by the legislature.[7]

The Department advances an alternative argument based upon § 302. It is contended that because that section distinguishes between Code provisions (*i. e.,* Articles V and VII) which "apply to all steps taken subsequent to the effective date of this act" though arising from pre-effective date condemnations, and provisions which apply only to cases wherein condemnation occurred after that date, the draftsmen of the 1971 amendments must have been capable of making similar distinc-

7. A similar argument put to us by the Department is that legislative intent with regard to the operation of § 610 can be garnered from a carefully structured scheme embodied in § 302, even if that section bears no direct application to § 610. Examining the language of § 302 in the context of the organization of the Code as a whole, it is contended that one finds that only the "procedural" provisions of Articles V and VII are to operate in the fashion requested by appellants; the "substantive" provisions contained in Article VI are limited to post-effective date condemnations. Because § 610 was inserted in Article VI, it is argued, that section should have no application to this post-effective date condemnation. Suffice it to say that our own careful examination of the Code reveals no consistent classification into "substantive" and "procedural" articles. Compare, *e. g.,* Section 610 with Section 519 of Article V.

tion. That they did not do so, it is said, is fatal to the condemnees' position here. Bolstering this argument is the fact that in a 1969 amendatory act, the effective date provision does draw the distinction contained in § 302.[8] Furthermore, the Department emphasizes, a 1971 note to § 302 prepared by the staff of the Joint State Government Commission states that "[t]he amendatory Act of 1971 . . . took effect immediately and is thus applicable to all condemnations on or after that date."

██ The contention that the General Assembly's failure to repeat the past practice of making specific provision for the so-called "retroactive effect" here requested evinces a legislative intent to exclude such operation as to any of the 1971 amendments is without merit. A converse argument is equally valid; the prior effective date provisions cited by the Department also were specific with regard to "prospective" application, i. e., when applicability was to be confined to cases involving condemnations occurring after adoption date, it was so stated. We thus find no guidance from the absence of prior language in the 1971 act's effective date provision.[9] As to

8. Section 3 of the Act of December 5, 1969, P.L. 316, No. 137, provides:
> "This act shall take effect immediately and shall apply to all condemnations effected thereafter, except that the provisions of sections 502, 504, 506, 507, 508, 510, 513, 514, 516, 520, 522, 703(2) and, 704 Eminent Domain Code as herein amended shall also apply to all steps taken subsequent to the effective date of this act in all condemnation proceedings in which the condemnation was effected prior to the effective date of this act."

9. The Department points out that in § 606–A of the 1971 amendments, retroactive applicability is provided for those amendments dealing with the rights of "displaced persons". The presence of this specific provision, argues the Department, implies the rejection of retroactive operation to § 610. The error of this analysis is that § 606–A speaks to *true* retroactivity, *viz.*, application to operative events occurring before the act's effective date. Nowhere in the 1971 act is there specific reference to the type of "retroactivity" contended for by appellants, namely, application to an event (expenditure for appraisals) which took place after the act's effective date.

the note of the Joint State Government Commission, while it is entitled to respect,[10] it cannot be controlling. Our task in this case is to interpret the language of the 1971 statute that "[t]his act shall take effect immediately"; the staff's comment that the act "is thus applicable to all condemnations on or after that date," unsupported by any rationale, is not helpful.[11]

In sum, we construe the phrase "this act shall take effect immediately" as it is used with regard to § 610 of the Code to allow remedial and limited expense reimbursement in any case, such as the one before us, wherein the expense has been incurred after the section was adopted. Such an application we think is in fact wholly prospective and is in harmony with the salutary purpose of the provision.[12]

Order of the Commonwealth Court is reversed and the order of the Court of Common Pleas of Berks County granting appellants' appraisal fees in the amount of $500 is reinstated.

10. We observe that in the introduction to its publication containing the amended Eminent Domain Code with comments, the Joint State Government Commission distinguishes between "official 1971 Comments" and "staff notes". The note relied upon by the Department falls into the latter classification.

11. It is pertinent that in § 1939 of the Statutory Construction Act, supra, it is stated that comments of a commission drafting a statute are generally to be consulted, "but the text of the statute shall control in the event of conflict between its text and such comments or report."

12. See the 1971 Official Comment to § 610 of the Joint State Government Commission.
    Because of our disposition of this case, we do not reach appellants' "just compensation" constitutional argument.