615 A.2d 857

Irwin POPOWSKY, Consumer Advocate, Petitioner,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

PENNSYLVANIA–AMERICAN WATER COMPANY, Petitioner,

v.

PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 18, 1991.

Decided Aug. 21, 1992.

Denise C. Goulet, Asst. Consumer Advocate, for petitioner/intervenor Edwin A. Popowsky, Consumer Advocate.

Anthony C. DeCusatis, for petitioner/intervenor Pennsylvania–American Water Co.

Kathryn G. Sophy, Asst. Counsel, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH, and KELLEY, JJ.

McGINLEY, Judge.

These consolidated petitions for review are from an order of the Pennsylvania Public Utility Commission (Commission or PUC) disposing of a request for an increase in base rates filed by Pennsylvania–American Water Company (PAWC or the utility). PAWC was formed on January 31, 1989, by the merger of the former Pennsylvania–American Water Company (former PAWC) with Western Pennsylvania Water Company (WPW). On March 16, 1990, PAWC filed a supplement to its approved tariff that was designed to produce an increase in annual revenues of $21,147,142, based on the projected operations for a future test year ending December 31, 1990. The Commission suspended the operation of the tariff supplement and ordered an investigation into the justness and reasonableness of PAWC's existing and proposed rates. The matter was assigned to Administrative Law Judge Marlane R. Chestnut (ALJ). Various parties filed complaints and petitions to intervene. After hearings, the ALJ issued her Recommended Decision on October 24, 1990. The parties filed exceptions and replies to exceptions.

■ The Commission entered its order on December 14, 1990, approving an annual increase in revenue of $13,979,878 (Commission Decision). The scope of our review of a decision of the Commission is to determine whether there was a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence in the record. Section 704 of the Administrative Agen-

cy Law, 2 Pa.C.S. § 704; *Barasch v. Pennsylvania Public Utility Commission*, 507 Pa. 561, 493 A.2d 653 (1985).

*Tax on Balance of Bad Debt Reserve at the End of 1986*

█ In PAWC's petition at No. 144 C.D.1991, the question presented is whether a utility is entitled to an expense item for an increase in income taxes caused by a change in federal tax law that repealed the option of deducting bad debts from taxable income on the basis of a bad debt reserve accrual and declared the amounts listed in such reserves at the end of 1986 to be taxable income, where the PUC assertedly approved the amortization of such tax expense previously, and its decision not to allow the expense constitutes a departure from its own consistent rulings on the issue, without a change in the facts or the law.

Section 166(a)(1) of the Internal Revenue Code, 26 U.S.C. § 166 (1992), provides as a general rule that there shall be a deduction from taxable income for debts that become wholly worthless during the tax year. Before 1986, subsection (c) of Section 166 provided the option to accrual basis taxpayers of deducting "a reasonable addition to a reserve for bad debts." Section 805 of the Tax Reform Act of 1986 (TRA–86)[1] repealed subsection (c) of Section 166; taxpayers are now required to deduct only those debts that they actually write off as uncollectible in a given tax year. Section 805 also declared the balance in a bad debt reserve at the end of 1986 to be taxable income. It permitted taxpayers to amortize that income over a period of four years.

PAWC notes that WPW and former PAWC (both of which employed bad debt reserves) claimed income tax expenses resulting from the amortization to taxable income of their bad debt reserve balances in their first base rate applications filed after TRA–86 became effective. In each case the Commission approved the tax expense item claimed, and PAWC contends that the Commission approved amortization of the full increase in taxable income (and, therefore, of the tax) as well. In 1989, after the merger, PAWC filed another rate increase

1. Pub.L. No. 99–514, 100 Stat. 2085, 2361.

request, which included a similar tax expense claim. Although the Office of Consumer Advocate (OCA) intervened in that proceeding, it did not challenge the bad debt reserve tax expense claim, and the Commission approved it. *Pennsylvania Public Utility Commission v. Pennsylvania–American Water Co.*, 71 Pa.P.U.C. 210 (1989) (*PAWC 1989* ).

In the present case, the Commission decided not to allow the claimed tax expense:

> Based upon our review of this matter, we are now of the opinion that the Company's claim should be disallowed. We agree with OCA that ratepayers do not receive a corresponding rate base reduction for this reserve .... Thus ratepayers must pay shareholders a return on these customer supplied funds while also paying a tax associated with these dollars.

> As stated by the OCA:

> Such a result is unreasonable. Either the dollars are ratepayer supplied and therefore should be deducted from rate base or the funds are not ratepayer supplied and therefore ratepayers should not have to bear the tax associated with this reserve.

Commission Decision, slip op. at 100 (citation omitted). PAWC argues that the Commission's decision violates the principle established in *UGI Corp. v. Pennsylvania Public Utility Commission*, 49 Pa.Commonwealth Ct. 69, 410 A.2d 923 (1980), and developed in later cases, that "the disallowance of a previously authorized expense constitutes impermissible retroactive ratemaking and that the failure to permit full recovery of amortized expenses results in an unconstitutional confiscation." *Bell Telephone Co. of Pennsylvania v. Pennsylvania Public Utility Commission*, 105 Pa.Commonwealth Ct. 286, 293, 524 A.2d 1009, 1013 (1987).

The PUC and OCA respond that the Commission's previous approvals of specific test year tax expense claims associated with the effect of TRA–86 on PAWC or its predecessors did not constitute amortizations of the full amount of the tax on the bad debt reserve at the end of 1986. OCA quotes *Penn-*

*sylvania Public Utility Commission v. Western Pennsylvania Water Co.,* 67 Pa.P.U.C. 529, 554, 95 P.U.R.4th 470, 496 (1988):

> There is no question in our minds that, during the future test year period, there will be an increment of taxable income which is not reflected in test year results which will have the effect of increasing Federal and State Income Taxes by the approximately $35,000 claimed by the Company *in this proceeding.* (Emphasis supplied by OCA.)

However, at the beginning of the discussion of this subject the Commission stated that WPW had claimed the income tax expense "in conjunction with the four-year amortization to taxable income of its December 31, 1986, reserve for bad debt balance of $353,000." *Id.* at 552, 95 P.U.R.4th at 495. The Commission summarized the ALJ's conclusion as follows: "The ALJ found the Company's claim *and position* to be meritorious and recommended against both the OTS and the OCA proposed adjustments." *Id.* at 553, 95 P.U.R.4th at 495 (emphasis added). The Commission approved the expense with the following language:

> At this time it is beyond question that the Company's claim represents a legitimate business expense, which under the doctrine laid down by the U.S. Supreme Court in the Hope and Bluefield cases, is an expense which utilities are permitted to recover from ratepayers.
>
> . . . .
>
> We adopt the recommendation of the ALJ, approve the adjustment (approximately $35,000) proposed by the Company and, accordingly, deny the exceptions of the OTS and the OCA.

*Id.* at 554, 95 P.U.R.4th at 496 (footnotes omitted) (citing *Federal Power Commission v. Hope Natural Gas Co.,* 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944), and *Bluefield Water Works and Improvement Co. v. West Virginia Public Service Commission,* 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923), and noting the consistency with the Commission's action in *Pennsylvania Public Utility Commission v. Pennsylvania Power Co.,* 67 Pa.P.U.C. 91, 93 P.U.R.4th 189 (1988)). In our view, the Commission's holding in *Western Pennsylva-*

*nia Water Co.* may not reasonably be interpreted as approving less than a full amortization of increased taxes resulting from TRA–86.[2] Therefore, the Commission's decision in the present case does indeed violate the principle of *UGI Corp.*[3]

In addition, this court recently considered precisely this same issue in *Columbia Gas of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission,* 149 Pa.Commonwealth Ct. 247, 613 A.2d 74 (1992). In that case the Commission for the first time agreed with OCA's contention that taxes on the balance of the bad debt reserve at the end of 1986 should not be considered to be legitimate items of tax expense in a rate filing.[4] We concluded that the Commission's previous rulings correctly recognized that the TRA–86 amortization of bad debt reserve to taxable income simply recaptured tax benefits that previously flowed through to ratepayers, because the former deduction of the full reserve accrual lowered the overall taxable income. We also approved the conclusion that the four-year period of amortization of these taxes commenced, for ratemaking purposes, with the first filing in which the full effects of TRA–86 were recognized by the Commission in rates. In view of our conclusion in this case that the Commission's action violated the principle of *UGI Corp.* and of our recent holding in *Columbia Gas,* we need not address PAWC's

2. *See also Pennsylvania Public Utility Commission v. Pennsylvania American Water Co.,* 68 Pa.P.U.C. 343, 375, 97 P.U.R.4th 469, 502 (1988) (relating to former PAWC), where the Commission relied on its recent holding in *Western Pennsylvania Water Co.* to affirm the ALJ's' statement that a utility may add back to its taxable income the *amortized* portion of its bad debt reserve.

3. The PUC asserts at p. 23 of the Definitive Brief for Respondent, "The Commission agreed with the OCA testimony that the increased tax liability for bad debt reserves should be eliminated because the tax would be fully recovered by the end of 1990. Commission Order at 97." This assertion is a misrepresentation of the Commission Decision. At the page cited the Commission summarizes OCA's alternative positions that (1) the full collection would be made by the end of 1990 or (2) the claim is not valid because ratepayers do not receive a rate base adjustment for the bad debt reserve. As quoted above, the holding of the Commission Decision on this point, slip op. at 100, is based entirely on OCA's second argument.

4. The present case makes the second time that we have seen the Commission disallow these tax expenses.

further argument that the Commission's action was unconstitutionally confiscatory.

*Applicability of Section 1327(e) of the Public Utility Code*

■ OCA's petition at No. 113 C.D.1990 concerns the recently enacted Section 1327(e) of the Public Utility Code (Code), 66 Pa.C.S. § 1327(e), relating to acquisition of property by a water or sewer authority at a cost lower than depreciated original cost, and providing for amortization of the difference to income of the purchasing utility. OCA frames the question presented as whether a statute that prospectively changes ratemaking treatment of property acquired before its effective date constitutes an impermissible, retroactive enactment. PAWC frames the question as whether Section 1327 of the Code was intended to apply to acquisitions completed before the effective date of its enactment.

Over the years, PAWC and its predecessors purchased other utilities or portions of their property. Sometimes they paid more than depreciated original cost and sometimes they paid less. The net result of these transactions, which are recorded in a special acquisitions account, is that PAWC owns property still used and useful in the public service for which it had paid approximately $1.7 million less than depreciated original cost, although the full depreciated original cost is and has been included in PAWC's calculation of its rate base.[5] Before June 5, 1990, Section 1311(b) of the Code, 66 Pa.C.S. § 1311(b), provided the sole basis for valuing the property of a utility that is used and useful in providing public service, that is, the rate base: "**Method of valuation.**—The value of the property of the public utility included in the rate base shall be the original cost of the property when first devoted to the

---

**5.** The Commission's regulation at 52 Pa.Code § 65.16 prescribes the method of accounting for water utilities. Under that system, the difference between the purchase price and the depreciated original cost of assets (whether higher or lower) is recorded in an acquisition adjustment account. The negative acquisition balance reflects the overall acquisition at less than depreciated original cost.

public service less the applicable accrued depreciation as such depreciation is determined by the commission." [6]

In PAWC's recent rate case, *PAWC 1989*, OCA recommended a reduction in rate base by the amount of the negative acquisition balance. PAWC resisted in part on the grounds that such a reduction would be contrary to the Commission's expressed policy of encouraging larger, prospering water companies to acquire smaller ones (often troubled municipal systems). The Commission observed that "failure to provide an incentive or a 'windfall' is not the equivalent of *discouraging* the acquisition of other water utilities." *PAWC 1989*, 71 Pa.P.U.C. at 248. The Commission stated that the Section 1311(b) requirement that the Commission determine accrued depreciation at the time property is first devoted to the public service did not necessarily require it to accept the book value of acquired property. However, under the evidence presented, PAWC had met its burden of showing that the book depreciation of the acquired property was the actual depreciation experienced, and so was proper.

> Accordingly, under the provisions of 66 Pa.C.S. § 1311, we must value the properties in question at book value and the fact that the Company was able to acquire them at 'fire sale' prices is irrelevant to our determination. While parties might persuasively argue that there is a legislative oversight in Section 1311, we are not privileged to correct that oversight. That is a task which is the responsibility of the legislature.

*Id.* at 250. The Commission rejected OCA's proposed adjustment.

By the Act of April 4, 1990, P.L. 107, No. 24, effective in sixty days (Act 24), the legislature added Section 1327 to the Code, 66 Pa.C.S. § 1327, relating to acquisitions of water and

---

6. Section 1311(b) of the Code was enacted by the Act of September 27, 1984, P.L. 721. This statutory prescription of the method of valuing property is itself a change from the method provided under the previous version of Section 1311, which stated, "The Commission may, after reasonable notice and hearing, ascertain and fix the *fair value* of the whole or any part of the property of any public utility . . . ." (Emphasis added.)

sewer authorities, which effectively amends Section 1311(b). Subsection (a) of Section 1327 relates to acquisitions at greater than depreciated original cost and provides that the full acquisition cost may be added to rate base when certain enumerated conditions are met, including a pledge that reasonable and prudent investments will be made to assure the new customers adequate service. Subsections (b) and (c) permit a utility that has agreed to acquire property to apply to the Commission for approval of inclusion of the full cost in rate base, and they provide appropriate procedures. Subsection (d) permits the Commission to order removal of such costs from rate base, after notice and a hearing, if the Commission determines that the investments have not been completed in a reasonable time.

Subsection (e) provides as follows:

**Acquisition cost lower than depreciated cost.**—If a public utility acquires property from another public utility, a municipal corporation or a person at a cost which is lower than the original cost of the property when first devoted to the public service less the applicable accrued depreciation and the property is used and useful in providing water or sewer service, the difference shall, absent matters of a substantial public interest, be amortized as an addition to income over a reasonable period of time or be passed through to the ratepayers by such other methodology as the commission may direct. Notice of the proposed treatment of an acquisition cost lower than the depreciated original cost shall be given to the Director of Trial Staff and the Consumer Advocate.[7]

In the present case, OCA proposed that the existing $1.7 million negative acquisition balance be amortized to PAWC's income over a period of five years, for a reduction in the future test year expense claim of $349,089. The ALJ considered the question to be difficult, because allowing the adjustment might reasonably be considered to be unfairly changing

---

7. PAWC notes that the bill that became Act 24 was introduced before PAWC made its rate filing in *PAWC 1989,* and some nine months before the Commission's decision; therefore, Act 24 was not conceived as a response to the Commission's comments in that case.

the regulatory rules, somewhat like changing the rules of the game inning by inning or after the first half of play. However, not allowing the claim means that ratepayers would be paying a return on an inflated rate base, a portion of which was not purchased with investor funds. The ALJ noted that OCA's position required application of Section 1327(e) to specific past transactions or for an indefinite time into the past. Insightfully, she observed that if the legislature intended such an application, it would have specified that the new provisions be applied to negative acquisition balances as of a specified date, as Congress did when it abolished the bad debt reserve deduction. She recommended rejection of the adjustment.

The Commission viewed the issue as whether the legislature intended Section 1327 to apply to transactions that occurred before its effective date. It concluded its discussion of this issue as follows:

> Our review of the record, leads us to conclude, that to adopt the OCA's recommendation would, in effect, give Section 1327 retroactive application. We hasten to point out that rate base is comprised of plant already booked at the time the new rates are to go into effect, *adjusted* by projected net plant additions and retirements.
>
> The ALJ determined that all the acquisitions in question, had been consummated well before the effective date of Act 24 June 5, 1990. Our review of the new statutory provision persuades us that Act 25 cannot logically be construed or interpreted to have a retroactive effect.
>
> In light of the foregoing, we shall deny the Exception of the OCA, thereby adopting the ALJ's recommendation to permit the Company's claim.

Commission Decision, slip op. at 42–43 (citations omitted).

■ OCA first asserts that nothing on the face of Section 1327(e) limits its application to acquisitions occurring after the effective date, and it notes that where the language of a statute is clear and unambiguous, further aids to determining legislative intent need not be employed. 1 Pa.C.S. § 1921(b) and (c); *Coretsky v. Board of Commissioners of Butler Township,* 520 Pa. 513, 555 A.2d 72 (1989). In our view, an Act that

begins with the phrase "If a utility acquires property" fosters dispute and cannot be deemed clear and unambiguous. Actually, the vigor of OCA's challenge reflects the presence of ambiguity, and this matter is not amenable to resolution on the basis of facial clarity.

OCA contends that the Commission erred by concluding that applying Section 1327(e) to past transactions constitutes giving it retroactive effect.[8] It asserts that the acquisition transactions are not the "trigger" for application of the statute; rather, the prospective act of setting rates is the trigger. OCA cites *Gehris v. Department of Transportation*, 471 Pa. 210, 369 A.2d 1271 (1977), where the Supreme Court explained that the general rule that statutes are to be construed to apply prospectively only (absent clear language to the contrary) becomes pertinent only after it is determined that a proposed operation would indeed be retrospective. *Gehris*, 471 Pa. at 215, 369 A.2d at 1273. In *Gehris* a condemnation had commenced before the effective date of the addition of Section 610 of the Eminent Domain Code,[9] which provides for reimbursement up to $500 for certain reasonable expenses of the condemnee, including appraisal fees. Gehris incurred appraisal expenses after the effective date. The Supreme Court explained that a statute does not operate retrospectively merely because some of the facts or conditions on which its operation depends came into existence before the effective date. There the incurring of the expenses was the event that resulted in liability. The taking was merely an antecedent act, albeit an important one, setting the chain of events in motion, and application of Section 610 to allow payment of the expenses was prospective. *Id.* at 216, 369 A.2d at 1273. In OCA's view, the acquisition of PAWC's assets is the "antecedent act," and

8. A retroactive law has been defined as one that "relates back to and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired." *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corp.*, 54 Pa.Commonwealth Ct. 376, 380, 421 A.2d 521, 523 (1980).

9. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* added by Section 7 of the Act of December 29, 1971, P.L. 640, 26 P.S. § 1–610.

the determination of rates after the effective date is the prospective application of Section 1327.

OCA cites other cases where application of an act to conditions existing before its effective date was held to be prospective, and it argues that any exceptions to this principle are cases that involved vested rights or contractual obligations. *Hargreaves v. Mid–Valley School District*, 40 Pa.Commonwealth Ct. 110, 396 A.2d 894 (1979). Ratemaking is not a contractual relationship between the Commission and a utility, and the utility has no vested right to a particular method or formula for determining rates. *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 315, 109 S.Ct. 609, 619, 102 L.Ed.2d 646 (1989). Rather, ratemaking is an ongoing process, and OCA argues that valuation of property in a rate case some six months after the effective date of Section 1327 is not retroactive merely because the assets being valued were acquired years earlier. It notes that the changeover from the previous fair value method of valuation to the depreciated original cost method, pursuant to the amendment of Section 1311 of the Code in 1984, applied to all valuation determinations made after the effective date of the amendment.

OCA contends that failure to adopt its position will frustrate the legislative intent to remedy a perceived inequity, comparing the present case to *Pennsylvania Engineering Corp.*, noted above, n. 8. There the addition of Section 704 of the Unemployment Compensation Law,[10] created a new rule where employees who received unemployment compensation benefits were later determined to be eligible for back wages. Section 704 eliminated a windfall by requiring every employer who deducted the unemployment benefits received from the back wages award to refund the deductions to the Unemployment Compensation Fund (for a credit) rather than keeping them. This court held that the deduction was the critical event, and those deductions made after the effective date were subject to the refund provision, although those made before

10. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2879, *as amended*, added by Section 8 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 864.

that date were not. OCA asserts that the legislature's intent in Section 1327 was to eliminate a windfall to utilities, and it should be applied in all rate cases after its effective date.

Finally, OCA argues that its proposed interpretation does not impermissibly change the rules after the fact. It observes that our Supreme Court and other courts have held that environmental statutes requiring owners of sources of mine drainage or harmful leachate to treat or dispose of them were not retroactively applied.[11] The problems these statutes address were and are ongoing, and most economic regulation would be unworkable if all laws disrupting prior expectations were deemed suspect.

The PUC and PAWC both respond that OCA has misperceived the point. They contend that the issue here is *not* whether the application of Section 1327(e) to an existing negative acquisition balance does or does not constitute retroactive application of the statute, but rather, as the Commission perceived, whether the legislature intended Section 1327(e) to apply to the results of transactions that occurred before its effective date. Both the PUC an PAWC refer to the standard principle of construction that the provisions of a statute must be interpreted with reference to the context in which they appear. *Consulting Engineers Council of Pennsylvania v. State Architects Licensure Board,* 522 Pa. 204, 560 A.2d 1375 (1989).

They disagree with OCA that the act of ratemaking is the focus of Section 1327(e), rather than the act of acquisition. They point out that Section 1327 is structured such that Subsection (a) provides the substantive treatment for acquisitions in the future at more than depreciated original cost (permitting inclusion of the excess in rate base under enumerated circumstances, and thereby amending Section 1311(b)), while subsection (e) is "parallel" and provides the "complement" regarding acquisitions in the future at less than depreciated original cost.

11. *Commonwealth v. Barnes & Tucker Co.,* 455 Pa. 392, 319 A.2d 871 (1974); *Chemical Waste Management Inc. v. United States Environmental Protection Agency,* 869 F.2d 1526 (D.C.Cir.1989).

The PUC notes that the language of the two subsections is identical up to the point of addressing their different subject matters. Further, subsection (b) permits a utility to secure the benefits of subsection (a) only upon notice of the "proposed transaction" to customers of the property to be acquired, its own customers and the Commission. Similarly, subsection (e) requires notice to the Director of Trial Staff and the Consumer Advocate of the "proposed treatment" of an acquisition cost lower than depreciated original cost. These conditions cannot be applied to past transactions. PAWC stresses that the verbs used throughout Section 1327 are in the future or the present tense, e.g.: "If a public utility acquires property" (Section 1327(a) and (e)); "reasonable and prudent investments will be made" Section 1327(a)(4)); "rates charged . . . will not increase unreasonably" (Section 1327(a)(8)). The PUC notes that the legislature could have used the past tense and stated, "Where a public utility acquired property . . . ," but it chose not to, and it could have provided that subsection (e) applies to existing negative adjustment balances, but it did not do that either.

The utility contends that OCA's proposed interpretation would unfairly change the rules after the fact—a result offensive to due process and potentially harmful to customers, if a utility with a positive adjustment balance could suddenly increase its rate base. PAWC discerns evidence of legislative intent to provide notice of the change the statute works, and time for the affected parties to order their affairs accordingly, in the specification of an effective date sixty days after the enactment date, citing 2 Sutherland Statutory Construction § 41.04 (4th Ed.): "Postponement of the effective date for an act indicates that it should have only prospective application."

We agree with PAWC that OCA's interpretation would dramatically alter the substantive economic effects of past transactions in a manner that the parties did not contemplate and could not have contemplated. Therefore, even if the presumption against retroactive effect "absent a clear and manifest intention" is not directly applicable, the policy behind that presumption precludes reading retroactivity into a stat-

ute. *See Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983) (where language of a statute is general and might be given both retroactive and prospective operation, it will be held to be prospective only).

PAWC asserts that OCA wrongly concludes that Section 1327(e) applies to past transactions because of its lack of express limiting language, but OCA offers no affirmative evidence that the legislature intended such a result. The utility counters OCA's analysis based on a "vested right" exception from *Hargreaves* by citation to *Costa v. Lair,* 241 Pa.Superior Ct. 517, 363 A.2d 1313 (1976), where the Superior Court noted that a "vested right" is not necessarily the same as a "substantive right," and the courts will permit retroactive effects on procedural rights but not on substantive rights.

In its Reply Brief, OCA repeats the argument that the Commission incorrectly concluded that OCA's interpretation of Section 1327(e) would constitute retroactive operation of the statute and compounded the error by deciding that the legislature did not intend such a result. OCA insists that the issue on appeal is whether the Commission erred concerning the retroactive operation of the legislation. It argues that subsections (a) through (d) affect the manner of valuing rate base (by permitting inclusion of excess cost paid, contrary to Section 1311(b)), but subsection (e) does not. Subsection (e) continues the use of depreciated original cost for valuation, but it requires amortization to utility income of the amount that the purchase price is less than depreciated cost. Subsections (a) through (d) focus on an increase to rate base, while subsection (e) focuses on the different subject of sharing the windfall that the utility realizes when it purchases useful property at below ratemaking cost. Therefore, OCA contends that the Commission should not have looked to the statute as a whole to interpret subsection (e).

■ In our view, the Commission correctly denied OCA's proposed adjustment. Given that OCA proposed a particular interpretation of a new statute, that PAWC proposed a contrary interpretation, and that the statute is not clear on its face, the Commission was required to construe that statute,

and it had no choice but to attempt to ascertain the intent of the legislature in enacting it. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intent of the General Assembly." 1 Pa.C.S. § 1921(a); *Pennsylvania Human Relations Commission v. Alto–Reste Park Cemetery Association*, 453 Pa. 124, 306 A.3d 881 (1973) (primary rule of construction is to determine intent of legislature and all other rules are secondary). Even if it were conceded (for the sake of argument) that under OCA's interpretation the statute does not operate retroactively, OCA would not necessarily prevail. Despite OCA's framing of the question, the issue never was whether its interpretation would produce a permissible result; rather, the issue is and always has been whether the legislature intended that result.

We disagree with OCA's central contention that the "focus" of Section 1327 is the act of ratemaking rather than the act of acquiring property. Both of the operative provisions, subsections (a) and (e), provide for certain ratemaking consequences "[i]f a public utility acquires property . . . ." These are conditional clauses, which imply, as a matter of grammar and of logic, that the acts described will occur in the future, if at all, and that if the acts do not occur then the specified consequences will not ensue and the status quo will prevail.[12] In this case, the status quo means no amortization of any negative acquisition balance to the income of the utility. *PAWC 1989.* The conditional phrasing makes the act of acquiring

---

**12.** "Words and phrases shall be construed according to the rules of grammar and according to their common and approved meaning . . . ." 1 Pa.C.S. § 1903(a). The present tense indicative verb "acquires" in the conditional clauses of subsections (a) and .(e) actually refers to future events. *See* George O. Curme, Syntax 422 (1931), concerning conditional clauses:

> *a. Future Time.* When the action or state expressed in the condition seems of practical importance to us, something which in the near or more remote future will concern us, hence something will within the realm of reality, we usually employ in the condition the present indicative, *which here as so often elsewhere has future force;* in the conclusion we use *will* in the first person to express intention and in all three persons employ the future indicative to indicate a future result: *"if it rains* (or *is stormy* ) I'*ll* no go." (First emphasis added.)

property the trigger for application, not the act of ratemaking.[13]

In our view, *Pennsylvania Engineering Corp.*, although cited by OCA, actually supports the Commission's conclusion. Section 704 of the Unemployment Compensation Law provides in part, "Any employer who makes a deduction from a back wages award ... shall be liable to pay ... an amount equal to the amount of such deduction." The meaning of Section 704 would be identical if it were phrased, "If an employer makes a deduction ..., the employer shall be liable ...." This court held that the transaction that triggered the legal liability was the deduction, and we held that deductions made after the effective date were subject to the provisions of Section 704, but those made before were not. Even though Section 704 was enacted to correct a perceived inequity, its provisions were applied only to transactions that occurred after its effective date.

Further the Commission was correct in considering subsection (e) in the overall context of Section 1327. OCA gives undue significance to the different ratemaking consequences provided in subsection (a) (increase in rate base) and subsection (e) (amortization to income of the utility) after the acquisitions occur. The purpose of the Commission's comparison of the two subsections was to determine when subsection (e) applies. In addition to the general principle of considering statutory provisions in context, we note that the Supreme Court has explained that the distinction between a subsection and an independent section of a statute is that the former, by its nature, is placed within a context and limited to a degree that the latter is not. *Gibbons v. New Castle Area School District*, 518 Pa. 443, 448, 543 A.2d 1087, 1089 (1988). We agree that the structure of Section 1327 lends support to the view that subsection (e), like subsection (a), was intended to apply only to the treatment of future acquisitions.

---

**13.** By contrast, when the legislature adopted Section 1311(b) in 1984, it provided that "[t]he value of the property of the public utility included in the rate base shall be [depreciated original cost]." There the act of valuing in the course of ratemaking was the trigger, and the provision necessarily applied to existing as well as to-be-acquired property.

In summary, as the ALJ, the Commission and PAWC all observed, there are a variety of phrasings that the legislature could have used to express clearly the meaning that OCA advances. Perhaps most straightforwardly, it could have said, "if a public utility acquires or has acquired property ...." The procedural notice requirements cannot possibly be met with regard to past acquisitions, and the legislature conceivably could have exempted those if it so intended. The provisions the legislature did adopt in subsection (e) are logical, consistent with the context of Section 1327 overall and easy to understand and apply, so long as they are interpreted to reach only future acquisitions.

Accordingly, we affirm the holding of the Commission Decision that Section 1327(e) of the Code applies to acquisitions of property by water and sewer utilities after the effective date of its enactment.

## ORDER

AND NOW, this 21st day of August, 1992, the order of the Pennsylvania Public Utility Commission at Docket No. R–901652, entered December 14, 1990, is affirmed as to the determination that Section 1327(e) of the Public Utility Code applies only to acquisitions of property occurring after the effective date of Act 24 of 1990. Insofar as the Public Utility Commission ordered that the Pennsylvania–American Water Company is not permitted to recover, as a legitimate operating expense, taxes it paid pursuant to the declaration of Congress in Section 805 of the Tax Reform Act of 1986 that the balance in a bad debt reserve at the end of 1986 was taxable income, the Public Utility Commission is reversed. The four-year period of amortization of these taxes commenced, for ratemaking purposes, with the first filing in which the full effects of the Tax Reform Act of 1986 were recognized by the Commission in rates. This case is remanded to the Commission for entry of an order consistent with the foregoing opinion.

Jurisdiction is relinquished.