IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Omar Almusa, M.D.,      :
     :
     Petitioner      :
     :
     v.      : No. 342 C.D. 2022
     : Argued: April 5, 2023
State Board of Medicine,      :
     :
     Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE WOJCIK                         FILED: July 13, 2023

Dr. Omar Almusa (Licensee) petitions this court for review of the order of the State Board of Medicine (Board) that denied Licensee's petition for reinstatement of his medical license. At issue is whether and how Act 53[1] should apply to Licensee's suspension and reinstatement. Licensee argues that the Board

---

[1] The Act of July 1, 2020, P.L. 575, No. 53, commonly known as Act 53, amended Section 9124 of the Criminal History Record Information Act, 18 Pa. C.S. §9124, and enacted Chapter 31 of the law governing the Bureau of Professional and Occupational Affairs, licensing boards, and licensing commissions, 63 Pa. C.S. §§3101-3118.

committed an error of law in applying Section 3113(f) of Act 53[2] to deny his reinstatement because the new Act 53 provisions prospectively remove the 10-year waiting period for reinstatement in Section 43(b) of the Medical Practice Act of 1985 (Act) for felony drug convictions that are not drug trafficking convictions.[3]  The

---

[2] Section 3113(f) of Act 53, 63 Pa. C.S. §3113(f), entitled "Drug Trafficking," provides as follows:

> Notwithstanding any provision of law to the contrary, the provisions of the respective practice acts relating to felony drug convictions under the [A]ct of April 14, 1972 (P.L. 233, No. 64), [*as amended*, 35 P.S. §§780-101 - 780-144,] [] known as The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act)], or a conviction under the laws of another jurisdiction which, if committed in this Commonwealth, would be a felony under the [Drug Act], shall only apply to an individual who has been convicted of a drug trafficking offense.  The licensing board or licensing commission may show, by a preponderance of the evidence, that the amount or weight of the controlled substance involved in a conviction meets the requirements for a drug trafficking offense.

Importantly, Section 3113 of Act 53, 63 Pa. C.S. §3113, became effective 180 days after enactment, on December 28, 2020, and provides that "the addition of this section by that Act shall apply to official acts and matters, including disciplinary matters, related to the issuance of licenses, certificates, registrations or permits by licensing boards or licensing commissions beginning on or after December 28, 2020."

[3] Act of December 20, 1985, P.L. 457, No. 112, *as amended*, 63 P.S. §§422.1-422.53. Section 43(b) of the Act, 63 P.S. §422.43(b), entitled "Reinstatement after felony conviction," provides as follows:

> Any person whose license, certificate or registration has been suspended or revoked because of a felony conviction under the [Drug Act], [] or similar law of another jurisdiction may apply for reinstatement after a period of at least ten years has elapsed from the date of conviction.  The board may reinstate the license if the board is satisfied that the person has made significant progress in personal rehabilitation since the conviction such that his reinstatement should not be expected to create a substantial risk of harm to the health and

**(Footnote continued on next page…)**

Board responds that it committed no error when it declined to retroactively apply Section 3113(f) of Act 53 to Licensee's suspension, when his conviction and suspension occurred before the effective date of that Section. After careful review, we affirm.

The relevant background facts found by the Board and from the record are as follows. Licensee was licensed to practice medicine as a radiologist since 2003. Reproduced Record (R.R.) at 34a. On June 27, 2018, Licensee pleaded guilty to one count of distribution of controlled substances, in violation of federal drug laws, as well as conspiracy and fraud, when he unlawfully distributed Vicodin to persons who were not patients and took the drugs himself. R.R. at 34a-36a. The parties agree, and the Board affirmed, that Licensee's federal drug conviction qualifies as a felony drug conviction under Pennsylvania's Drug Act. *Id.* at 36a. The parties also agreed, and the Board affirmed, that Licensee's conviction does not constitute a drug trafficking offense as that term is defined in Section 3113(i) of Act 53[4] and referenced in Section 3113(f) of Act 53. *Id.* at 9a.

On July 25, 2019,[5] the Board issued a Notice and Order of Automatic Suspension to Licensee, based on his conviction of a felony drug offense, and suspended his license effective August 15, 2019, "for a period of at least 10 years

safety of his patients or the public or a substantial risk of further criminal violations and if the person meets all other licensing qualifications of this act, including the examination requirement.

[4] Section 3113(i) of Act 53, 63 P.S. §3113(i), relevant here, defines a drug trafficking offense as illegal distribution of a controlled substance if the weight of the controlled substance, in this case, Vicodin, is at least 100 grams. *See* Sections 4 and 13 of the Drug Act, 35 P.S. §§780-104 and 780-113. Licensee was convicted for illegally distributing less than 100 grams of Vicodin.

[5] The Notice and Order of Automatic Suspension has a mailing date of July 25, 2019. R.R. at 39a. Although, in some places, the Board refers to the Notice dated July 24, 2019, the correct date is July 25, 2019, and we will refer to the Notice by that date.

from the date of conviction under authority of sections 40(b)[6] and 43(b) of the Act." R.R. at 37a. The Board advised Licensee that his response and any hearing "shall be limited to" whether Licensee was convicted of the offense and whether the offense qualifies as a felony drug conviction under the Drug Act. *Id.* at 38a.

After receiving no response or request for a hearing from Licensee, on November 26, 2019, the Board issued a Final Order of Automatic Suspension. R.R. at 29a-32a. In this order, the Board confirmed that Licensee had proper notice of the July 25, 2019 Notice, Licensee failed to respond or request a hearing on his automatic suspension, and any such hearing would be limited to the two issues regarding Licensee's conviction. *Id.* Licensee does not dispute his conviction or that it qualifies as a felony drug conviction under the Drug Act. Licensee does not dispute, and the Board confirmed, that Licensee did not respond to the Board's July 25, 2019 Notice, and that he did not appeal the Board's November 26, 2019 Final Order. *Id.* at 8a. In addition, Licensee does not dispute that his automatic suspension was lawful when entered on November 26, 2019. *Id.*

On April 8, 2021, after Section 3113(f) of Act 53 became effective on December 28, 2020, Licensee filed a petition for reinstatement with the Board. R.R. at 8a. After considering arguments from the parties and without taking any additional evidence, the Board issued a Final Memorandum Order dated March 17, 2022. *Id.* at 8a-12a. The Board granted Licensee's motion to determine that his conviction does not meet the definition of drug trafficking in Act 53, but it denied

---

[6] Section 40(b) of the Act, 63 P.S. §422.40(b), provides, in relevant part, that the Board shall automatically suspend a licensee's license upon any felony conviction under the Drug Act, not limited to drug trafficking as defined in Section 3113(i) of Act 53. Section 40(b) of the Act also provides that "[r]estoration of such license or certificate shall be made as hereinafter provided in the case of revocation or suspension of such license or certificate." Section 43(b) of the Act, entitled "Reinstatement after felony conviction," is one such section of the Act governing restoration of medical licenses, as referenced in Section 40(b) of the Act.

Licensee's reinstatement based on its conclusion that Section 3113(f) of Act 53 does not apply retroactively to permit Licensee's reinstatement, when his license was suspended a year before the effective date of Section 3113(f).

Although Licensee agreed that his suspension was lawful when imposed, the Board viewed Licensee's request as seeking "termination of the automatic suspension" imposed on November 26, 2019, as well as seeking reinstatement of his license. R.R. at 8a. The Board summarized the relevant facts and recognized that the narrow issue presented focused on the effect of Section 3113(f) of Act 53 on Licensee's suspension and reinstatement. *Id.* at 9a. The Board concluded that it "is precluded by Pennsylvania statute to construe [S]ection 3113[(f)] of Act 53 as retroactive unless such retroactive effect is clearly and manifestly intended by the General Assembly." *Id.* The Board concluded that Section 3113(f) of Act 53 contains no such manifestation of retroactivity. *Id.* The Board concluded that "prospectivity is the default rule" unless the General Assembly has clearly expressed its intent to disrupt settled expectations, citing in support *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). R.R. at 9a. The Board rejected Licensee's argument that Section 3113(f) of Act 53 should apply to his reinstatement, as a distinct and separate matter from his suspension, reasoning that this argument would require the Board to assume the General Assembly chose a "'surprisingly indirect route to convey an important and easily expressed message,'" again citing *Landgraf*. R.R. at 9a. The Board concluded that

> [f]urthermore, retroactive application would have the practical effect of reversing or terminating all automatic suspensions that resulted from a conviction other than drug trafficking defined by Act 53. It is nearly beyond comprehension that the legislature would not clearly provide for the reversal or termination of decades of lawfully entered automatic suspensions entered prior to

5

Act 53. Therefore, the Board, without clear legislative direction authorizing it to vacate [Licensee's] automatic suspension, declines to take such action.

*Id.* at 10a.

The Board addressed an order of the State Board of Osteopathic Medicine for a different physician, that Licensee attached to his petition for reinstatement, and rejected the implicit suggestion that it should be relied upon for precedential or persuasive value in Licensee's case. R.R. at 10a. The Board rejected this implication because the laws governing the Board and the State Board of Osteopathic Medicine are dissimilar in several ways, including the automatic suspension provisions.[7] *Id.*

The Board then discussed two unreported decisions of our Court that it believed "firmly address the automatic suspension provisions of the respective practice acts." R.R. at 10a. In *Khan v. Bureau of Professional and Occupational Affairs, State Board of Medicine* (Pa. Cmwlth., No. 1047 C.D. 2016, filed November 21, 2017),[8] the Court considered a licensee's suspension for a felony drug conviction under Section 40(b) of the Act, the same section that governs Licensee's suspension here. *Khan*, slip op. at 2. The licensee in *Khan* argued that the Board erred in denying him a hearing before suspending his license, and erred when it concluded it

---

[7] The Final Order involving Thomas J. Whalen, D.O., dated February 9, 2021, may be found in the Reproduced Record at 24a-28a. In that order, the board denied in part the licensee's petition to vacate his suspension, but it reinstated his license to expired status as of December 27, 2020, the effective date of Section 3113(f) of Act 53. In that case, the licensee was convicted of felony drug violations, but not drug trafficking violations. His suspension was in progress, but not completed, when Section 3113(f) of Act 53 became effective. Therefore, the board terminated the licensee's suspension and reinstated his license, based on the application of Section 3113(f) of Act 53 to licensee's suspension.

[8] *See* Pa. R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

6

lacked discretion to impose a suspension of less than 10 years. *Id.*, slip op. at 2-3. The Court affirmed the Board and denied the licensee's request for a hearing, because a hearing is not required when no evidentiary facts are at issue, citing *Denier v. State Board of Medicine, Bureau of Professional and Occupational Affairs*, 683 A.2d 949 (Pa. Cmwlth. 1996). *Khan*, slip op. at 2. The Court also denied the licensee's request that the Board hold a hearing to exercise its discretion over the length of his suspension, relying on the plain language of Section 43(b) of the Act that prohibits a licensee from seeking reinstatement until 10 years have elapsed from his conviction. *Khan*, slip op. at 2-3. The Court concluded that, under the facts presented and the plain language of Section 43(b) of the Act, "[t]he Board lacks discretion to impose a suspension for a period of less than [10] years." *Khan*, slip op. at 3.

The Board then contrasted the result in *Acri v. Bureau of Professional and Occupational Affairs, State Board of Osteopathic Medicine* (Pa. Cmwlth., No. 856 C.D. 2017, filed January 5, 2018). In *Acri*, the State Board of Osteopathic Medicine suspended the license of the licensee who was convicted of felony drug charges under Section 14(b) the Osteopathic Medical Practice Act (Osteopathic Act), 63 P.S. §271.14(b).[9] *Acri*, slip op. at 1. Although 1 section of the Osteopathic Act required a licensee to wait 10 years for reinstatement, another section of the Osteopathic Act suggested that a licensee must wait only 5 years for reinstatement, and another section gave no time limit for reissuing a suspended license. *Id.* The Court rejected the licensee's argument that he was entitled to a hearing before his suspension was imposed because no facts about his conviction were at issue. *Id.* The Court concluded, however, that the relevant sections of the Osteopathic Act

---

[9] Act of October 5, 1978, P.L. 1109, *as amended.*

7

governing the length of licensee's suspension were "circular and confusing," and modified the board's order "insofar as it imposed a mandatory [5-] or [10-]year suspension" on the licensee. *Acri*, slip op. at 4. The Court directed that "any reissuance request from a suspension" for felony drug convictions "shall be processed and reviewed" under the section of the Osteopathic Act giving the board discretion over the duration of a licensee's suspension. *Id.* Here, the Board concluded that, unlike the provision in the Osteopathic Act giving the board discretion over the duration of a licensee's suspension in *Acri*, the Act provided no such discretion to the Board, and that a 10-year waiting period was required by the mandatory language in Section 43(b) of the Act. Licensee then petitioned the Court for review.[10]

The following general principles are relevant to our analysis. Regarding Act 53, the plain language of Section 3113(f) of Act 53, standing alone, and when reviewed in the context of the entire statute, governs our interpretation.[11]

---

[10] Our scope of review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Barran v. State Board of Medicine*, 670 A.2d 765, 767 n.3 (Pa. Cmwlth. 1996). Because the issue presented here involves the interpretation of statutory provisions and presents questions of law, our scope of review is plenary, and the standard of review is *de novo*. *In re Vencil*, 152 A.3d 235, 241 (Pa. 2017).

[11]    When presented with issues of statutory interpretation, this Court's standard of review is *de novo* and our scope of review is plenary. *Whitmoyer v. Workers' Compensation Appeal Board (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018). We are mindful, as always, that the object of statutory interpretation is to ascertain the intent of the General Assembly, the best indicator of which is the plain language of the statute itself. 1 Pa. C.S. §1921(a)(b); *Department of Labor & Industry v.* [*Workers' Compensation Appeal Board*] *(Lin &* [*Eastern*] *Taste)*, 187 A.3d 914, 922 (Pa. 2018). Where statutory language is clear and unambiguous, this Court must give effect to the words of the statute. *Crown Castle NG* [*East*] *LLC*

**(Footnote continued on next page…)**

8

As to the issue of retroactivity, Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1926, entitled "Presumption against retroactive effect," provides that "[n]o statute shall be constructed to be retroactive unless clearly and manifestly so intended by the General Assembly." Our Court has explained that a law is given "retroactive effect when it is used to impose new legal burdens on a past transaction or occurrence." *Pierson v. Workers' Compensation Appeal Board (Consol Pennsylvania Coal Company LLC)*, 252 A.3d 1169, 1179 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

Licensee first argues that the automatic suspension the Board imposed under Section 40(b) of the Act should be viewed as distinct from the 10-year waiting period for reinstatement under Section 43(b) of the Act. Licensee acknowledges and agrees that his automatic suspension for a felony drug conviction under Section 40(b) of the Act was proper when it was imposed, because the Act did not differentiate between felony drug convictions and felony drug trafficking convictions at that time. Licensee argues that he is not seeking to vacate or undo his lawfully imposed suspension, but is focused only on when he may seek reinstatement. Licensee argues that because Section 40(b) imposes no minimum or maximum length on an automatic suspension, the length of an automatic suspension is determined by when a licensee seeks reinstatement under Section 43(b) of the Act, which he argues is a separate, official Board action. Licensee contends that the

_____

*v. Pennsylvania Public Utility Commission*, 234 A.3d 665, 674 (Pa. 2020). When interpreting a statute, courts may not look beyond the plain meaning of a statute under the guise of pursing its spirit. *Id.*; *see also Warrantech Consumer Products Services, Inc. v. Reliance Insurance Company in Liquidation*, 96 A.3d 346, 354 (Pa. 2014).

*City of Johnstown v. Workers' Compensation Appeal Board (Sevanick)*, 255 A.3d 214, 221 (Pa. 2021).

duration language in the Board's orders merely provided notice that he could not apply for reinstatement for 10 years, but did not impose a 10-year suspension. Because Licensee filed his petition for reinstatement after the effective date of Section 3113(f) of Act 53, he argues that the plain language of that section should be applied to the official Board action denying his reinstatement.

Licensee further argues that the Board erred by denying retroactive application of Section 3113(f) of Act 53 to his suspension, when he is not seeking retroactive application, but, rather, prospective application of that section to his reinstatement. Licensee argues that Section 3113 of Act 53, by its stated terms, applies to "official acts and matters, including disciplinary matters, related to the issuance of licenses" by the Board, "beginning on or after December 28, 2020." Licensee argues that the Board's denial of his reinstatement was an official act, relating to the issuance of his license, that occurred after Section 3113(f) of Act 53 became effective, and should be interpreted to eliminate the 10-year waiting period for a felony drug conviction that is not a drug trafficking conviction. Licensee argues that the intent of the Legislature when it enacted Section 3113(f) of Act 53 was to treat felony drug convictions that are not drug trafficking convictions less harshly than in the past. Licensee argues that the Board erred by failing to grant him a hearing on his reinstatement so that Section 3113(f) of Act 53 could be properly applied.

The Board first responds that Licensee should be precluded from now challenging his 2019 suspension orders because he waited too long. The Board contends that its July 25, 2019 Notice and Order referenced both Section 40(b) of the Act imposing the automatic suspension, and Section 43(b) of the Act imposing the 10-year duration. The Board argues that Licensee did not respond or seek a

hearing after receiving the Notice, and he should not be permitted to do so several years later. The Board also argues that because Licensee failed to appeal the November 26, 2019 Final Order, which also referenced Sections 40(b) and 43(b) of the Act, Licensee should be precluded from challenging it now. Licensee does not dispute that he did not seek a hearing or appeal the Board's automatic suspension at the time, but he argues that the Board specifically limited any hearing to the facts of his conviction, which he did not dispute.

The Board further responds that, if the issue is not precluded, Section 3113(f) of Act 53 should not be applied retroactively to Licensee's conviction or suspension, which undoubtedly occurred before the effective date of that section. The Board responds that it had no discretion to impose less than a 10-year suspension, citing *Khan* (Pa. Cmwlth., No. 1047 C.D. 2016, filed November 21, 2017), and *Denier*, 683 A.2d 949. The Board responds that Section 3113 of Act 53 lacks clear manifestation to be applied retroactively, and absent such direction it may not be used to challenge the duration of Licensee's suspension. The Board further responds that retroactive application of automatic suspension provisions was addressed by this Court in the 1980s when the Act and the Pharmacy Act[12] were amended to impose suspensions based on drug convictions, a converse scenario to the enactment of Act 53.

In *Morris v. Department of State, Bureau of Professional and Occupational Affairs, State Board of Pharmacy*, 537 A.2d 93 (Pa. Cmwlth. 1988), the Court held that the amendments to the Pharmacy Act, which required a 10-year suspension for a felony drug conviction, were not improperly retroactively applied to the licensee, when the convictions occurred after the Pharmacy Act was amended,

---

[12] Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §§390-1 - 390-13.

11

even though the underlying offenses occurred before the Pharmacy Act was amended. Similarly, in *Galena v. Department of State Professional and Occupational Affairs*, 551 A.2d 676 (Pa. Cmwlth. 1988), the Court held that the Act's recent amendments requiring an automatic suspension for felony drug convictions were not improperly retroactively applied to a licensee, when his convictions occurred after the Act was amended. The Board argues that *Morris* and *Galena* provide clear guidance that amendments to the Act should not be applied retroactively to undo Licensee's suspension, when his suspension was validly imposed before Act 53 became effective.

First, although we acknowledge that Licensee failed to request a hearing or appeal from the imposition of his suspension by the Board in 2019, he is not precluded from seeking review of the Board's denial of his reinstatement in 2022. The Board's March 17, 2022 Final Memorandum Order is a final order from which Licensee may appeal as of right under Pa. R.A.P. 341.

However, we reject Licensee's contention that the imposition of his suspension and the duration of his suspension are two distinct Board actions. Although Section 40(b) of the Act does not contain a minimum or maximum suspension for a licensee convicted of a felony drug crime, Section 43(b) of the Act clearly does. The plain language of these related sections of the Act provide that Licensee was subject to a 10-year suspension for his felony drug conviction, when the Board imposed the suspension in 2019, before the enactment of Act 53. Licensee does not dispute that his suspension was valid when imposed in 2019. The Board twice informed Licensee that his license was suspended for at least 10 years under Sections 40(b) and 43(b) of the Act. *See* R.R. at 30a-31a, 37a-38a. We may not disregard the plain language of Sections 40(b) and 43(b) of the Act in an attempt to

12

pursue the spirit of Section 3113(f) of Act 53. *Crown Castle NG East LLC*, 234 A.3d at 674.

Further, our Court has determined that the Board lacks discretion to impose a suspension other than a 10-year suspension under the Act, when a licensee is convicted of a felony drug crime. In *Galena*, our Court considered the suspension of a licensee convicted of a felony drug offense under the Act, and specifically reviewed Sections 40(b) and 43(b) of the Act, as both sections related to his suspension. *Galena*, 551 A.2d at 677 n.1. The Court first recited that Section 40(b) of the Act provided for the automatic suspension of a licensee's license for a felony drug conviction, and then explained as follows.

> It should be noted here that Section 43(b) of the [] Act, [] governing reinstatement, sets out the minimum term for suspension and provides in applicable part:
>
> Any person whose license, certificate or registration has been suspended or revoked because of a felony conviction under [the Drug Act], . . . may apply for reinstatement after a period of at least ten years has elapsed from the date of the conviction. (Footnote omitted.)

*Id.*

Our Court has reviewed Sections 40(b) and 43(b) of the Act regarding suspensions, and determined that Section 43(b) "sets out the minimum term for suspension." *Galena*, 551 A.2d at 677 n.1. The enactment of Act 53 does not change our interpretation of the relationship between Sections 40(b) and 43(b) of the Act. We have repeatedly held that the Board "does not have the discretion under the [] Act to suspend [a licensee's] license for any period less than [10] years." *Id.* at 678. *See also Denier*, 683 A.2d at 953 ("The Board has no discretion to impose less

13

than a [10]-year suspension for a felony conviction [under the Act]. . . ."); and *Khan*, slip op. at 3 ("The statutory language of Section 43(b) of the [Act] is clear and free from ambiguity. The Board lacks discretion to impose a suspension for a period of less than [10] years."). We agree with the Board that *Acri* (Pa. Cmwlth., No. 856 C.D. 2017, filed January 5, 2018), is distinguishable from this case, because the length of the suspension imposed under the Osteopathic Act was ambiguous in *Acri*, but the length of the suspension imposed under the Act here is not.

We further agree with the Board that Section 3113(f) of Act 53 may not be applied retroactively to Licensee's suspension, in the absence of the Legislature's expression of its clear and manifest intent to do so. Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1926; *see also Landgraf*, 511 U.S. at 286. Here, the Legislature expressed that Section 3113 of Act 53 was to apply prospectively, not retroactively, when it provided that the addition of Section 3113 "shall apply to official acts and matters, including disciplinary matters, related to the issuance of licenses, certificates, registrations or permits by licensing boards or licensing commissions beginning on or after December 28, 2020."

Based on the Legislature's clear directive, we decline to apply Section 3113(f) of Act 53 to the imposition of Licensee's suspension, when his suspension, including the length of suspension, was imposed before Act 53 became effective. "'[A] statute does not operate retrospectively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment.'" *Morris*, 537 A.2d at 95 (quoting *Gehris v. Department of Transportation*, [] 369 A.2d 1271, 1273 ([Pa.] 1977)). Because the Board's official act imposing Licensee's suspension under Sections 40(b) and 43(b) of the Act occurred in 2019, before Section 3113 of Act 53 became effective, the amendments

14

in Section 3113(f) of Act 53 limiting professional discipline to felony drug trafficking convictions do not apply to Licensee.

Accordingly, we affirm the Board.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Omar Almusa, M.D.,                         :
                                           :
                    Petitioner             :
                                           :
        v.                                 : No. 342 C.D. 2022
                                           :
State Board of Medicine,                   :
                                           :
                    Respondent             :


# O R D E R


AND NOW, this 13th day of July, 2023, the Final Memorandum Order of the State Board of Medicine dated March 17, 2022, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Omar Almusa, M.D.,           :
                 Petitioner     :
                            :
           v.              :   No.  342 C.D. 2022
                            :   Argued:  April 5, 2023
State Board of Medicine,      :
                   Respondent   :


BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                 **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                 **HONORABLE ANNE E. COVEY,** Judge
                 **HONORABLE MICHAEL H. WOJCIK,** Judge
                 **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                 **HONORABLE LORI A. DUMAS,** Judge
                 **HONORABLE STACY WALLACE,** Judge

**DISSENTING OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED:  July 13, 2023**


Omar Almusa, M.D. (Petitioner) was convicted of a crime that, under the law at the time, resulted in the automatic suspension of his medical license in July 2019, which became final in November 2019.  Petitioner does not challenge the validity of this suspension or seek to vacate or expunge it from his record.  (Petitioner's Brief (Br.) at 10, 17.)  Rather, Petitioner seeks to have his petition to terminate the automatic suspension and reinstate his license (Reinstatement Application) considered in accordance with the law in effect **at the time he filed** his Reinstatement Application.  Section 2 of the Act of July 1, 2020, P.L. 575, No. 53[1]

---

[1] Section 3113(f) provides:

     **(f) Drug trafficking.--**Notwithstanding any provision of law to the contrary, **the provisions of the respective practice acts relating to felony drug convictions** under the [A]ct of April 14, 1972, P.L. 233, [*as amended*, 35 P.S. §§ 780-101—

**(Footnote continued on next page…)**

(Act 53), which added, among other provisions, Section 3113(f) to Title 63, 63 Pa.C.S. § 3113(f), became effective on December 28, 2020, and redefined how licensing boards, in official acts, consider criminal offenses. Petitioner filed his Reinstatement Application on April 19, 2021, so at the time he filed his Application, Section 3113(f) was in effect. Only those convicted of "drug trafficking offenses," as defined by Section 3113, are required to wait 10 years to seek reinstatement under Section 43(b) of the Medical Practice Act of 1985[2] (Act). Otherwise, the State Board

---

780-144,] known as The Controlled Substance, Drug, Device and Cosmetic Act [(Drug Act)], or a conviction for an offense under the laws of another jurisdiction which, if committed in this Commonwealth, would be a felony under the [Drug Act], **shall only apply to** an individual who has been convicted of a **drug trafficking offense**. The licensing board or licensing commission may show, by a preponderance of the evidence, that the amount or weight of the controlled substance involved in a conviction meets the requirements for a drug trafficking offense.

*Id.* (emphasis added). Relevant here, a "[d]rug trafficking offense" is "[a] violation of [S]ection 13(a)(14), (30), or (37) of [t]he [Drug Act, 35 P.S. § 780-113(a)(14), (30), (37)], if the controlled substance . . . is: . . . [a] narcotic drug classified in Schedule I or Schedule II under [S]ection 4 of [t]he [Drug Act, 35 P.S. § 780-104], if the aggregate weight . . . involved is at least 100 grams." 63 Pa.C.S. § 3113. Petitioner's conviction involved 39.6 grams of hydrocodone, a Schedule II controlled substance, (Reproduced Record (R.R.) at 17a), and, therefore, would not constitute a drug trafficking offense.

[2] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.43(b). Section 43(b) states:

**(b) Reinstatement after felony conviction.--Any person whose license**, certificate or registration **has been suspended or revoked because of a felony conviction** under the [Drug Act] or similar law of another jurisdiction, **may apply for reinstatement after a period of at least ten years has elapsed from the date of conviction**. The [State Board of Medicine (Board)] may reinstate the license if the [B]oard is satisfied that the person has made significant progress in personal rehabilitation since the conviction such that his reinstatement should not be expected to create a substantial risk of harm to the health and safety of his patients or the public or a substantial risk of further criminal violations and if the person

**(Footnote continued on next page…)**

RCJ – 2

of Medicine (Board) can look at, among other considerations, a person's "progress in personal rehabilitation since the conviction," and the potential "risk of harm to the health and safety of [the] patients or the public," to determine whether to reinstate the license. 63 P.S. § 422.43(b). Petitioner was not convicted of a drug trafficking offense, so, under Section 3113(f), he would not be required to wait 10 years to seek the reinstatement of his license under Section 43(b) of the Act. Had Act 53 been in effect at the time of Petitioner's conviction, there would not have even been an automatic suspension of his license; thus, allowing Petitioner the ability to seek reinstatement earlier would not be inconsistent with the current state of the law. Although Petitioner's position seems like a common sense understanding and straightforward reading of the plain language of the statutory provisions at issue, the Board, and the Majority, overly complicate the inquiry. However, after analyzing the statutory provisions, case law, and rule of lenity, I believe the Board must consider Petitioner's Reinstatement Application. I, therefore, would reverse the Board, and must, respectfully, dissent.

Various sections in the Act work together to establish the processes for the suspension of a license and the subsequent reinstatement of that license if the Board concludes reinstatement is appropriate. At issue here are the Act's penalty provisions, the automatic suspension provision, and the reinstatement provision for automatically suspended licenses. Importantly, whether an automatic license suspension occurs in the first instance, and whether the 10-year waiting period to seek reinstatement of that license applies, **are <u>predicated</u> on a felony drug**

---

meets all other licensing qualifications of this act, including the examination requirement.

*Id.* (emphasis added).

**conviction**. This has not changed. What has changed is the General Assembly's **definition** of which felony drug convictions are subject to the penalty provisions. The provision now reads, "[n]otwithstanding any provision of law to the contrary, **the provisions of the respective practice acts relating to felony drug convictions** under the [Drug Act] **shall only apply to** an individual who has been convicted of a **drug trafficking offense**." 63 Pa.C.S. § 3113(f). This change, set forth in Section 3113(f), is **applicable to official actions taken** by the Commonwealth's licensing boards **after December 28, 2020**.

Petitioner argues, essentially, that the reinstatement of a suspended license by the Board is an official act distinct from the automatic suspension. As they are distinct official actions, the predicate, a felony drug conviction subject to the penalty provisions of the Act, must exist at the time each official act is sought. Petitioner was not convicted of a drug trafficking offense. There is, thus, no retroactive application of Act 53 because, while the Board's official act of suspending his license occurred prior to Act 53, the Reinstatement Application was filed after Act 53's effective date.

Section 40(b) of the Act[3] relates to the automatic suspension of a license based on certain Drug Act (or similar extra-jurisdictional law) convictions, which, at the

---

[3] Section 40(b) of the Act states:

> **(b) Automatic suspensions.--A license** or certificate issued under this act **shall automatically be suspended upon** the legal commitment to an institution of a licensee or certificate holder because of mental incompetency from any cause upon filing with the [B]oard a certified copy of such commitment, **conviction of a felony under [t]he [Drug Act], or conviction of an offense under the laws of another jurisdiction**, which, if committed in this Commonwealth, would be a felony under **[t]he [Drug Act]**. As used in this section the term "conviction" shall include a judgment, an admission of guilt or a plea of nolo contendere. Automatic suspension under this subsection shall not be stayed pending any appeal of a conviction.

**(Footnote continued on next page…)**

RCJ – 4

time of Petitioner's conviction, required the automatic suspension of Petitioner's license.  The Board officially acted upon the Commonwealth's initial petition seeking this automatic suspension of Petitioner's license under Section 40(b) of the Act, first by imposing a temporary suspension in July 2019, followed by its final action of suspending the license in November 2019.  Petitioner's license suspension was subject to the reinstatement procedures of Section 43(b) of the Act. Section 43(b) does not grant automatic reinstatement based on the mere passage of time but requires the Board to make **an individualized determination** on whether a license should be reinstated.  As part of this determination, the Board must consider, among other things, the progress the person has made toward rehabilitation and whether reinstatement would "create a substantial risk of harm to the health and safety of [the] patients or the public."  63 P.S. § 422.43(b).

These two provisions, while related, require separate official actions to be taken by the Board and are each predicated on the existence of a felony drug conviction to trigger, respectively, the automatic suspension and 10-year waiting period for seeking reinstatement.  As the two actions, suspension and reinstatement, are distinct, official acts, there is no retroactivity issue in applying Act 53 to the Reinstatement Application because Petitioner's Reinstatement Application, upon which the Board had to act officially, was filed on April 19, 2021.  This is **after** Section 3113(f), and its redefinition of what constitutes a felony drug conviction for the purposes of action by a licensing board, became effective.  Thus, applying Act 53's provisions to the Reinstatement Application would not be a retroactive

---

**Restoration of such license or certificate shall be made as hereinafter provided in the case of revocation or suspension of such license or certificate.**

63 P.S. § 422.40(b) (emphasis added).

application, but the **prospective** application of Act 53.  And, under the plain terms of Section 43(b) of the Act, as of December 28, 2020, the 10-year waiting period to seek reinstatement applies only to a person whose predicate felony drug conviction is a drug trafficking offense, which does not include Petitioner.

The Majority relies on two cases in which this Court has read these two provisions together to conclude that there is an automatic, minimum 10-year suspension for a felony drug conviction, to conclude that **any** consideration of reinstatement before 10 years is prohibited.  *Khan v. Bureau of Pro. & Occupational Affs., State Bd. of Med.* (Pa. Cmwlth., No. 1047 C.D. 2016, filed Nov. 21, 2017); *Galena v. Dep't of State Pro. & Occupational Affs.*, 551 A.2d 676, 677 n.1, 678 (Pa. Cmwlth. 1988).  I do not read these cases as supporting the conclusion that the Board's actions under Sections 40(b) and 43(b) are not **distinct, official actions**, which would bring an official action under Section 43(b) under the ambit of Act 53 if filed after December 28, 2020.  Moreover, both *Khan*, an unreported opinion that is not binding,[4] and *Galena*, were rendered **before** Act 53 redefined what constitutes a felony drug conviction, which is the predicate to when a reinstatement petition can be filed under the plain language of Section 43(b).  Thus, I do not find those decisions relevant or persuasive following the General Assembly's enactment of Act 53.

In addition to Petitioner's interpretation of the plain language of Act 53, case law and the rule of lenity also support his argument that applying Act 53 to the Reinstatement Application is not an improper retroactive application of the statute. First, the United States Supreme Court, in *Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994), held that "[w]hen the intervening statute authorizes or **affects the**

---

[4] *See* Pennsylvania Rule of Appellate Procedure 126(b)(1), Pa.R.A.P. 126(b)(1); Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

**propriety of prospective relief, application of the new provision is not retroactive**.” (Emphasis added.) The prospective relief for the suspension of Petitioner's license suspension is the reinstatement of that license under Section 43(b). The concerns underlying the prohibition against the retroactive application of a law, that doing so “disrupt[s]” “settled expectations” as to what the law is and the ability to conform one's conduct accordingly, *id.* at 265, or will be used “as a means of retribution,” *id.* at 266, are inapplicable under these circumstances because the change relates to the remedy – the prospective reinstatement of Petitioner's license. Allowing Petitioner to seek the reinstatement of his license earlier, based on the **General Assembly's policy decision**, expressed in Section 3113(f), that only drug trafficking convictions should be considered in license disciplinary matters, and the fact that Petitioner's conviction does not qualify cannot be considered a “means of retribution.” *Id.* Nor does it affect the ability to know what the law is and to conform one's conduct to the law because the conduct has already occurred. Therefore, I agree with Petitioner that *Landgraf* supports his interpretation. (*See* Petitioner's Br. at 18.)

Second, in *Rose Corporation v. Workers' Compensation Appeal Board (Espada)*, 238 A.3d 551 (Pa. Cmwlth. 2020) (*en banc*), this Court recently addressed the necessary considerations for determining whether a statute should apply prospectively or retroactively. This Court recognized the general rule that statutes must be construed prospectively, unless the General Assembly clearly intended otherwise. *Id.* at 559 (citing Section 1926 of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1926[5]). Amendments to statutes must be construed prospectively from the date the amendment becomes effective. *Id.* (citing Section 1953 of the

---

[5] Section 1926 of the SCA states: “No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly.” 1 Pa.C.S. § 1926.

SCA, 1 Pa.C.S. § 1953[6]). Nonetheless, this Court continued, "[a]n exception to this rule is where the statute is merely procedural and **does not alter any substantive rights**, in which case it may be retroactively applied, irrespective of whether the statutory amendment includes an express retroactivity clause." *Id.* (citing *Keystone Coal Mining Corp. v. Workmen's Comp. Appeal Bd. (Wolfe)*, 673 A.2d 418, 421 (Pa. Cmwlth. 1996)) (emphasis added).

> A substantive right is implicated when the retroactive application of a statute **imposes new legal burdens on past transactions** or occurrences. . . . On the other hand, **procedural statutes establish the method for enforcing a right**, but have no bearing on whether a claimant has a legal entitlement to relief under the facts as they exist in a particular case. . . .

*Id.* (quoting *Keystone Coal Mining*, 673 A.2d at 421) (emphasis added).

Applying Act 53 to the Reinstatement Application would not impose "new legal burdens on past transactions." *See id.* (quoting *Keystone Coal Mining*, 673 A.2d at 421). The Commonwealth already met its burden of establishing that Petitioner was convicted of a crime that, **at the time**, required the automatic suspension of his license. However, "[i]t is well settled in the law that a medical professional license, once obtained in compliance with the law, becomes a privilege or right in the nature of property and is safeguarded by due process requirements."

---

[6] Section 1953 of the SCA provides:

> Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective.

1 Pa.C.S. § 1953.

*Bhattacharjee v. Dep't of State, State Bd. of Med.*, 808 A.2d 280, 283 (Pa. Cmwlth. 2002) (citation omitted).  Even when a license is suspended, the holder still possesses a property right in that license.  *McGrath v. Bureau of Pro. & Occupational Affs., State Bd. of Nursing*, 173 A.3d 656, 665 (Pa. 2017) (citing *Brown v. State Bd. of Pharmacy*, 566 A.2d 913, 915 (Pa. Cmwlth. 1989)).  Petitioner's license, in which **he continues to have a property right,** was subject to reinstatement "as provided in [S]ection 43(b)."  (Reproduced Record (R.R.) at 31a.)  Section 43(b) precludes a licensee who has a felony drug conviction from seeking reinstatement for 10 years, but, **as of December 28, 2020**, the types of felony drug convictions to which this 10-year period would apply **was** unanimously[7] **narrowed by the General Assembly** and **no longer includes Petitioner's conviction**.  Allowing Petitioner to seek reinstatement earlier than originally anticipated would not change that his license was suspended or whether he is entitled to a medical license as of the time he filed the Reinstatement Application.  Rather, it relates to "the method for enforcing" the right to a license that Petitioner already has.  *See Rose Corp.*, 238 A.3d at 559 (quoting *Keystone Coal Mining*, 673 A.2d at 421).  Ultimately, applying Act 53 to the Reinstatement Application "does not alter [Petitioner's] **past** status" but "gives effect to [Petitioner's] status as it existed at the time [he] filed [his Reinstatement Application]."  *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 617 (Pa. Cmwlth. 2018) (*en banc*) (holding that applying *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017), which found the impairment rating evaluation

---

7   *See* https://www.legis.state.pa.us/cfdocs/billinfo/bill_history.cfm?syear=2019&sind =0&body=S&type= B&bn=637 (last visited June 26, 2023) (reflecting that the votes approving the bill that became Act 53 in the House and the Senate were, respectively, 201-0 and 50-0).

system unconstitutional, to a subsequently filed petition to reinstate benefits was not unlawfully retroactive) (emphasis in original).

Finally, the Board refused to apply Act 53 retroactively because accepting "Petitioner's . . . argument would require the [Board] to assume that [the General Assembly] chose a surprisingly indirect route to convey an important and easily expressed message." (Board Opinion (Op.) at 2 (quoting *Landgraf*, 511 U.S. at 262) (alterations in original).) The Majority similarly concludes there was no clear, expressed intention for Act 53 to apply retroactively. *Almusa v. State Bd. of Med.*, __ A.3d __, __ (Pa. Cmwlth., No. 342 C.D. 2022, filed July 13, 2023), slip op. at 14. I disagree that Petitioner's arguments require "such a broad and unsupported assumption," (Board Op. at 2), or that the General Assembly's intent as to the application of Act 53 was unclear. Through Section 3113(f), the General Assembly made the policy decision that "**the provisions of the respective practice acts relating to felony drug convictions** under the [Drug Act], **shall only apply to** an individual who has been convicted of a **drug trafficking offense**," in licensing boards' official actions after December 28, 2020. 63 Pa.C.S. § 3113(f) (emphasis added). The stated purpose of the legislation that became Act 53 was to create a "fair, modern set of rules for consideration of criminal records in occupational licensure, which will **remove unnecessary barriers to employment**." Senate Co-Sponsorship Memorandum, Senate Bill 637 (Apr. 3, 2019) (emphasis added).[8]

Section 43(b) of the Act, left untouched by the General Assembly, specifically ties the 10-year restriction on seeking reinstatement to those having a felony drug conviction under the Drug Act or similar law, which as of December 28, 2020, was redefined by the General Assembly to include only felony drug trafficking

---

[8] *See* https://www.legis.state.pa.us//cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=S&SPick=20190&cosponId=29091 (last visited June 26, 2023).

convictions. Section 43(b) of the Act and Section 3113(f) must be read *in pari materia* and construed together, as they both address the effect of felony drug convictions on professional licensing decisions. Section 1932 of the SCA, 1 Pa.C.S. § 1932.[9] When construed this way, a reasonable interpretation of these provisions is that the General Assembly intended to allow those whose licenses had been automatically suspended for felony drug convictions that **no longer** warrant consideration for discipline under Act 53 (or suspension under Section 40(b) of the Act) to seek reinstatement before the 10-year period expires if sought after December 28, 2020. This interpretation gives effect to the General Assembly's intent in Act 53, as well as the plain language of Section 43(b) of the Act and Section 3113(f). This is the object of statutory construction, Section 1921(a), (b) of the SCA, 1 Pa.C.S. § 1921(a), (b),[10] and, therefore, I disagree with the rejection of Petitioner's interpretation.

While I am not persuaded by the Majority's differing interpretation, to the extent that there are multiple interpretations, and thus ambiguity, these provisions are punitive and, therefore, subject to the rule of lenity, which favors Petitioner. *See* Section 1928(b)(1) of the SCA, 1 Pa.C.S. § 1928(b)(1) (requiring penal statutes to be interpreted strictly); *Pa. State Real Est. Comm'n v. Keller*, 165 A.2d 79, 80 (Pa. 1960) (holding that a statute involving the investigation and suspension of professional licenses is penal in nature); *Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 600 (Pa. Cmwlth. 2011) (stating the rule of lenity provides that

---

[9] Section 1932 of the SCA provides, in pertinent part: "(a) Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things" and "(b) Statutes *in pari materia* shall be construed together, if possible, as one statute." 1 Pa.C.S. § 1932.

[10] Section 1921(a) and (b) states: "(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly . . ."; and "(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(a), (b).

ambiguities in penal statutes are to be construed against the government), *superseded by statute on other grounds as recognized in Penjuke v. Pa. Bd. of Prob. & Parole*, 203 A.3d 401, 417 (Pa. Cmwlth. 2019).

For these reasons, I believe the Board erred in not applying Section 3113(f) to allow it to consider Petitioner's Reinstatement Application and determine whether it is satisfied that Petitioner meets the requirements for reinstatement under Section 43(b) of the Act. Therefore, I must, respectfully dissent from the Majority's affirmance of the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judge McCullough and Judge Wallace join this opinion.